ITASCA PUBLIC SCHOOL DISTRICT NO. 10, Plaintiff-Appellant, v. SALLY A. WARD, Director of Employment Security for the State of Illinois, Defendant-Appellee.

First District (1st Division)  No. 87—3752

Opinion filed January 30, 1989.—Rehearing denied March 27, 1989.

Stuart D. Gordon, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Itasca Public School District No. 10 (the District), appeals from the decision of the trial court on administrative review which affirmed the imposition of a penalty by defendant, the Director

of Illinois Department of Employment Security (the Director), on the District for its failure to timely file quarterly reports (UC-40 forms) with the Director as required by section 1800 of the Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 630). For the following reasons, we reverse the judgment of the trial court and remand the cause for further administrative proceedings.

The underlying facts are undisputed. On January 18, 1978, the District filed a form entitled "Election by Local Governmental Entity to Reimburse Benefits in Lieu of Paying Contributions" with the Bureau of Employment Security, Division of Unemployment Insurance, which stated, in pertinent part:

> "The undersigned Local Governmental Entity does hereby elect, pursuant to the provisions of Sections 1404 and 1405 of the Illinois Unemployment Insurance Act, to pay when due, in lieu of contributions, an amount equal to the amount of regular benefits and the amount of extended benefits paid to its workers or former workers for any weeks beginning on or after the effective date of this election, on the basis of wages for insured work paid to them by it during the period this election is in effect.

> * * *

> 3. At the close of each calendar quarter, the undersigned local governmental entity will receive a Statement of the amount due from it for the benefits paid to its workers or former workers during the calendar quarter, and will pay the amount due to the Director within 30 days after the date of mailing of the Statement; in the event that it fails to make any payment when due, or fails to file, when due, any quarterly report of the wages paid to its workers, it shall be subject to the interest or penalty provisions of the law, as the case may be."

Despite the above provisions as well as regulations promulgated by the Director requiring the quarterly filing of UC-40 forms, the District failed to file the reports. On November 7, 1984, more than six years after the District had elected to become a reimbursing employer, the Director notified the District of its determination that the District had failed to make payment in lieu of contribution in the amount of $.38 and that it had failed to file quarterly UC-40 forms since its election. As a result, the Director assessed the District $.38 for unpaid contributions and $4,235 in penalties for the period from March 1980 through April 1983.

On November 27, 1984, the District filed a protest and a petition

for hearing on the penalty assessment. The District did not dispute the fact that it owed $.38 or that it had not filed quarterly reports. However, the District claimed that it was unaware of its obligation to file the reports until notified by the Director in November 1984. The District further emphasizes that as soon as it was notified of its obligation to file quarterly reports, it did so.

On appeal, the District contends that: (1) the Director lacks the statutory authority to require the filing of UC-40 forms and to impose penalties based upon the failure to file those forms; and (2) in the alternative, the imposition of penalties against the District was improper. During oral argument, the appellate court also raised the issue, *sua sponte*, of whether the Director has discretion to waive the penalty and interest imposed by section 1402 of the Act for good cause.

■■ Initially, the District argues that because administrative agencies can be given only those powers necessary to execute the duties of that agency and the UC-40 forms serve no useful purpose other than to calculate penalties, the Director has no authority to require the filing of the UC-40 forms. This argument fails as a result of several faulty premises upon which the conclusion is based.

First, with respect to the Director's statutory authority to require the filing of UC-40 forms, section 1700 of the Act provides that: "It shall be the duty of the Director to administer this Act[ ] *** [and to] determine all questions of general policy, promulgate rules and regulations and be responsible for the administration of this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 610.) Section 1701 further provides that: "Regulations may be adopted, amended, or rescinded by the Director and shall become effective ten days after filing with the Secretary of State, and such filing shall be public notice of such regulation, amendment thereto, or rescission thereof, as the case may be." Ill. Rev. Stat. 1985, ch. 48, par. 611.

With respect to the filing of quarterly UC-40 forms, regulation 12 of the State of Illinois Department of Labor, effective September 22, 1977, states, in pertinent part:

> "1. Every employer, including employers electing payments in lieu of contributions under the provisions of Section 1404 or Section 302 of the Act, shall file a report with respect to each calendar quarter, listing the name and Social Security Account Number of each worker, and providing the information with respect to each worker required by sub-paragraphs a or b, below, and such other information as the Director may require."

Regulation 12 conforms with and enforces the statutory requirement

set forth in section 1800 of the Act, which provides that each employing unit "shall keep such true and accurate records with respect to services performed *** as may be required by the rules and regulations of the Director." Ill. Rev. Stat. 1985, ch. 48, par. 630.

Second, contrary to the District's position, the legislature has indicated that the Director's authority to impose penalties is necessary to effectuate the Act's purpose under certain circumstances. Section 1402 of the Act expressly authorizes the Director to impose penalties on any employer who fails to file a report of wages, with the caveat that: "[A]ll or part of any penalty may be waived by the Director for good cause shown." (Ill. Rev. Stat. 1985, ch. 48, par. 552.) Regulation 2765.65(a) (56 Ill. Adm. Code 2765.65(a) (1985)) defines "good cause" as:

"[A]ny or all of the following:

(1) Where the delay was caused by the death or serious illness of the employer or a member of his immediate family, or by the death or serious illness of the person in the employer's organization responsible for the preparation and filing of the report or for making the payment.

(2) Where the delay was caused by the destruction of the employer's business records by fire or other casualty without fault."

In 1987, the Director reassessed the above regulation and amended it by adding the following two instances where the Director is authorized to waive interest and penalty:

"(3) Where the Agency, in its written communication or through a specifically identified employee in oral communication directed to a specific employer account has affirmatively misled the employer as to its duties and obligations such that the charging of interest to the employer would violate the principle of equitable estoppel.

(4) For the purpose of waiver of interest only: Where the employer relied to its detriment on a certificate issued by the Director pursuant to Section 2600 of the Act and the Director agrees, at a later date, that the certificate was issued in error, such waiver shall be granted from the date the erroneous certificate was issued to a date 30 days after notice that the original certificate was issued in error." 11 Ill. Reg. 12887 (eff. July 22, 1987).

More recently, as of July 5, 1988, the Director reassessed the regulation and added section 2765.68:

"(a) Notwithstanding any other provisions of this Part to the

contrary, the Director shall waive the reporting penalty provided in Section 1402 of the Act for any reports of wages paid in calendar year 1987 and any calendar year thereafter, if the employer, within 30 working days of the date of mailing of the notice from the Agency that its report (UC-3/40) is delinquent, shows that:

(1) The total amount of contributions due for the calendar quarter of such report (UC-3/40) is less than $500; and

(2) This delinquent report (UC-3/40) is the employer's first such late report during the last 20 calendar quarters, including such quarters during which the employer was not required to file reports (UC-3/40) under the Act.

(b) The employer's application for this waiver shall be made in the form provided in Section 2765.75, except that it need not be sworn and instead of stating the 'good cause applicable,' the employer shall state that it met the requirements of subsections (a)(1) and (2). In support of its statement that it met the requirements of subsection (a)(1), the employer shall attach a copy of its Wage and Contribution Report (UC-3/40) for such calendar quarter."

In the present case, the District contends that it was unaware of the requirement that it file UC-40 forms once it elected to be a reimbursing employee. Relying on section 1405 of the Act, which sets forth the procedure by which a governmental entity may elect to make payments in lieu of contributions, the District argues that there is no requirement that the electing employer file quarterly forms. In fact, the District claims that pursuant to section 1405(C) of the Act, it is the Director's obligation to mail quarterly reports to the District, not vice versa, and the Director never mailed such quarterly reports to the District. Further, in a letter dated September 3, 1983, to the Unemployment Insurance division of the Department of Labor, the District states that after it had elected to be a reimbursing employee, it had asked the Department if there was any further information or data required from it. The Department allegedly responded that no further information was necessary because the District had elected to reimburse benefits. In reliance on the information, the District filed no reports until it was notified of the requirement to do so in the "Determination and Assessment and Demand for Payment," dated November 7, 1984, which stated that the District owed $.38 for payment in lieu of contributions and $4,235 in penalties. Thus, for a period in excess of six years, the District operated as a reimbursing employee, remained current within $.38 on its

payments to the Director, never filed a quarterly report and was never requested to do so. We note that the Director has claimed no prejudice to its fulfillment of the Act's purpose, *i.e.*, payment of unemployment benefits, as a result of the District's failure to file quarterly reports and that the Director expressly admits that the assessed penalty has no relationship to the $.38 assessment.

In our view, the present situation is similar to that in *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406, a consolidated appeal, where Southern Illinois Asphalt Company, Inc., and Airtex Products, Inc., contended that the fines imposed by the Pollution Control Board were arbitrary and not authorized in light of mitigating circumstances. In *Southern*, the Environmental Protection Agency (EPA) filed a complaint against Southern, charging that the company had built its facility without first obtaining a permit pursuant to the rules and regulations of the governing Act and fined Southern $5,000. In light of the facts that Southern had not been charged with polluting the air and that evidence had indicated that Southern was an extremely clean plant, the supreme court found that Southern's failure to obtain a permit was "pure inadvertence" and that a penalty was unjustified.

Consolidated with *Southern* was the appeal of Airtex Products, Inc., which had been charged by the local sanitary board with polluting the water with toxic chemicals. In response to the charges, Airtex engaged in extensive cooperative efforts with the city and local sanitary board to eliminate, or at least to diminish to acceptable standards, the discharge of contaminants. Approximately two years later, the EPA succeeded to the duties of the sanitary board and on May 14, 1971, the EPA sent a telegram to the mayor and city council informing them that Airtex' discharge of toxic wastes into the city storm-sewer system must cease immediately. As a result, Airtex ceased its operations the following day. Approximately five months later, the Agency filed its complaint against Airtex and fined Airtex $11,000 for violations.

The supreme court held that the fine was arbitrary, purely punitive and "not required as an aid in the enforcement of the Act" (60 Ill. 2d at 216) in light of the facts that the violation had ceased immediately upon receipt of the telegram and Airtex had been diligently trying to conform its operation with the rules.

Although *Southern* construes the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*) which, unlike the Unemployment Insurance Act, contains an implicit grant of discretionary authority in the imposition of penalties, we find that the con-

siderations given by the supreme court to the mitigating circumstances surrounding imposition of penalties persuasive in the present case. Although the Unemployment Insurance Act itself does not contain the same built-in safeguards against arbitrariness, the Director is given wide discretion in promulgating the rules and regulations for effectuating the Act's mandates. Consequently, consideration of those mitigating circumstances which may warrant waiver of penalties for "good cause" is within the Director's authority at the stage where the rules and regulations are promulgated. As discussed, cognizant of the need to broaden its definition of "good cause" so as to encompass additional mitigating circumstances, the Director has evidenced its discretion by adding several new circumstances which constitute grounds for waiving penalties and interest.

▮ ▮ As a general rule, statutes will not be applied retroactively unless it is clearly apparent that the legislature intended retroactive application. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 193 N.E.2d 844.) However, this general rule is not applicable where the enactment relates to remedies and forms of procedure and does not affect substantive rights. As stated by the *Hogan* court:

"Where a statute giving a special remedy is amended without a savings clause in favor of pending actions, all actions affected must be decided in conformity to the law then existing, both in the trial and Appellate Courts, without regard to whether the actions accrued before or after such change, or whether action had been previously instituted." (29 Ill. 2d at 184-85.)

In our view, this exception is equally applicable to rules and regulations promulgated by an administrative body pursuant to authority delegated by the legislature. In the present case, by broadening the definition of "good cause," the Director has amended the remedial aspect of the regulation which governs penalties imposed for the failure to file quarterly reports by allowing penalties to be waived under a broader scope of mitigating circumstances. The amendments have not altered any substantive rights. (See *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 415 N.E.2d 1034; *County of La Salle v. Pollution Control Board* (1986), 146 Ill. App. 3d 603, 497 N.E.2d 164.) Therefore, we conclude that the amendments to part 2765 of title 56 of the Illinois Administrative Code (56 Ill. Adm. Code 2765 (1985)), which expand the definition of "good cause" as it is used in section 1402 of the Act, should be given retroactive application in the present case, which was pending at the time the amendments became effective.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded for further administrative proceedings consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and QUINLAN, J., concur.