TRILLA STEEL DRUM CORPORATION, Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (1st Division) No. 1—87—2757

Opinion filed March 13, 1989.

A.L. Zimmer, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Joseph M. Claps, Marcia Bellows, and Joseph J. Annunzio, Assistant Attorneys General, of Chicago, of counsel), for respondents.

JUSTICE CAMPBELL delivered the opinion of the court:

Trilla Drum Corporation (Trilla) appeals from an administrative decision of the Illinois Pollution Control Board (the Board) imposing a $10,000 fine against Trilla for failure to comply with Illinois permit requirements for a period in excess of 15 months.

Trilla is an Illinois corporation engaged in the business of manufacturing 55-gallon steel drums in Chicago, Illinois. As part of its manufacturing process, Trilla applies coatings to both the interior and exterior of the steel drums, resulting in emissions of volatile organic materials (VOM) into the air. In December 1982, the Board adopted certain regulations that pertain to steel drum manufacturers requiring that coatings or linings used to cover the interior of steel drums contain no more than 4.3 pounds of VOM per gallon of interior coating as applied and that paints or coatings used to cover the exterior of steel drums contain not more than 3.5 pounds of VOM per gallon of exterior coating as applied. (35 Ill. Adm. Code 215.204(j) (1985).) Since Trilla conducts a regulated activity, it is required to have a current permit issued by the Illinois Environmental Protection Agency (the Agency) in order to operate its business. Trilla's permit expired on December 31, 1984, and for a period of 15 months Trilla did not renew its operating permit.

On January 16, 1986, Trilla filed its petition for a variance[1] from

_____

[1]A variance is a license issued by the Board allowing a standard or limitation of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 et seq.) to be exceeded for a specific amount of time in order to permit a company to achieve compliance with that provision. A variance may be granted where it is found that compliance with a provision causes undue hardship. See Ill. Rev. Stat. 1985, ch. 111½, par. 1035.

the Board requirements until December 31, 1987. The Board granted the variance on February 5, 1987, finding that the company would suffer an arbitrary or unreasonable hardship if the variance was denied. On March 13, 1986, Trilla filed an application with the Agency for an operating permit which the Agency denied for the reason that the Board regulations to control emissions might be violated. On May 19, 1987, a second permit application was filed with the Agency and was also denied for the same reason.

On April 18, 1986, the Agency filed a two-count complaint against Trilla. Count I alleged that Trilla had operated its facility since January 1, 1985, without an operating permit from the Agency, and count II charged that the company's interior coating line was not in compliance with the Board's regulations. A hearing on the Agency's complaint was held on July 21, 1986, at which time a stipulation of facts was presented to the Board. Among the facts agreed to by the parties was that Trilla did not have an operating permit for its facility between January 1, 1985, and the date the Agency's complaint was filed due to its failure to comply with the Board's emission control regulations. Trilla contested the allegation that its interior coating line was emitting VOM in excess of that allowed by the Board's regulations and presented evidence that it actively tried to reduce the violative air emissions.

On June 25, 1987, the Board issued an opinion finding that the Agency did not meet its burden of proving the allegations of Trilla's noncompliance with the air emissions standards as contained in count II of the Agency's complaint. Regarding the count I allegations of permit violations, the Board found that because Trilla admitted to operating without a permit from January 1, 1985, to April 18, 1986, Trilla had violated both section 9(b) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1009(b)) and 35 Ill. Adm. Code 201.141 and 215.204(j) (1985). The Board imposed the maximum $10,000 fine as an incentive for Trilla to come into compliance with its regulations. The Board further ordered Trilla to cease and desist operating until such time as it acquired a permit. Thereafter, Trilla moved to modify the order of June 25, 1987, to allow it to continue operating while it continued actively to seek an operating permit. Trilla also requested the Board to vacate or reduce the $10,000 fine. In response to the motion, on August 11, 1987, the Board stayed its cease and desist order for 60 days to allow Trilla to reapply for an operating permit, but denied relief from the imposition of the $10,000 fine. This direct appeal from the order imposing the fine by the Board followed.

■ On appeal, Trilla argues that a mere violation of the permit requirement without a showing of harm to the environmental regula-

tion process does not justify a $10,000 fine. Section 42(a) of the Illinois Environmental Protection Act (the Act) provides:

> "Any person that violates any provisions of this Act or any regulation adopted by the Board, or any permit or term or condition thereof, or that violates any determination or order of the Board pursuant to this Act, shall be liable to a civil penalty of not to exceed $10,000 for said violation and an additional civil penalty of not to exceed $1,000 for each day during which violation continues." (Ill. Rev. Stat. 1985, ch. 111½, par. 1042(a).)

General constraints have been established concerning the power of the Board under section 42(a) to levy monetary penalties. Penalties are imposed primarily to aid in enforcement of the Act rather than to impose punishment. (Ill. Rev. Stat. 1985, ch. 111½, par. 1033(c); *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 313 N.E.2d 161.) A monetary fine must be supported by some reasonable ground appearing in the record (*Bresler Ice Cream Co. v. Pollution Control Board* (1974), 21 Ill. App. 3d 560, 315 N.E.2d 619) and must be commensurate with the seriousness of the infraction for which it is imposed. (*City of Chicago v. Pollution Control Board* (1978), 57 Ill. App. 3d 517, 373 N.E.2d 512.) Monetary penalties must not be imposed solely to set an example. *City of Chicago*, 57 Ill. App. 3d 517, 373 N.E.2d 512.

■ In reviewing the record in the case at bar, we do not believe the facts as set forth are sufficient to support the imposition of the maximum $10,000 fine for Trilla's permit violation. The record reveals that the penalty was imposed due to Trilla's failure to obtain an operating permit for a period of 15 months. During that time, however, Trilla was not entirely beyond the regulatory awareness of the Agency since prior to the end of 1984 Trilla had applied for and received an operating permit. Further, in January 1986, Trilla had applied for and received a variance from the Agency. By Trilla's permit and variance applications, the company became a part of the regulatory program of the Agency and the Agency had data concerning the company's existence, the products it manufactured and the contaminants which were emitted by the operation. The Board has not shown that Trilla's omission has harmed in a serious manner either the information gathering or oversight roles of the Agency. See *Standard Scrap Metal Co. v. Pollution Control Board* (1986), 142 Ill. App. 3d 655, 491 N.E.2d 1251.

The circumstances here are readily distinguishable from those cases where a violation of the permit program could create a harmful impediment to the Agency's responsibility to protect the environment and the public. (*Cf. Standard Scrap Metal Co. v. Pollution Control*

*Board* (1986), 142 Ill. App. 3d 655, 491 N.E.2d 1251 (the company had never applied for. operating permits for its wire-burning furnace and incinerator for a period of nine years and this court found the company had exhibited a blatant disregard for the rules and procedures designed to protect the environment and upheld a $30,000 penalty).) Trilla is a company against which the Board had not proven actual pollution in any instance. In our judgment, after examining the record, we do not find a reasonable basis of support for the imposition of the $10,000 fine. (See *Bresler Ice Cream Co. v. Pollution Control Board* (1974), 21 Ill. App. 3d 560, 315 N.E.2d 619.) The imposition of the maximum penalty here for a permit violation where there has been no finding that Trilla was a polluter would appear unwarranted on this record. As this court has previously determined, the company should only be penalized in a measure appropriate to the impediment it poses to the effective implementation of the goals of the Act. *Harris-Hub Co. v. Pollution Control Board* (1977), 50 Ill. App. 3d 608, 365 N.E.2d 1071.

In *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406, our supreme court addressed the issue of when a fine imposed by the Pollution Control Board is arbitrary and unauthorized. There an asphalt pavement supplier failed to obtain an operating permit before beginning operations. Southern Illinois Asphalt was not charged with air pollution, and the failure to obtain an operating permit at the time of commencing operations was characterized by the supreme court as inadvertent. The Board, however, assessed a $5,000 penalty. In addition, the Board issued a cease and desist order against the further operation of the plant, apparently unaware of the fact that the plant had voluntarily closed before the complaint against it had been filed. The supreme court found that the fine was an arbitrary penalty and was unjustified in view of the mitigating circumstances shown by the evidence, stating:

"Obviously the General Assembly did not intend that the Pollution Control Board should impose a monetary fine in every case of a violation of the Act or regulations. Section 33(a) provides that the Board, following a hearing, shall enter such order 'as it shall deem appropriate under the circumstances.' Section 33(b) provides that the order *may* include a direction to cease and desist 'and/or the imposition by the Board of civil penalties in accord with Section 42.' [Citation.] Section 42 authorizes the imposition of a civil penalty of *not to exceed* $10,000 for the violation and an additional civil penalty of *not to exceed* $1,000 for each day during which the violation continues. Implicit in the grant of the discretionary authority to impose monetary civil

penalties in varying amounts is the requirement that the severity of the penalty should bear some relationship to the seriousness of the infraction or conduct." (Emphasis in original.) 60 Ill. 2d at 208, 326 N.E.2d at 410.

In the case at bar, Trilla's business involved treating metal products with paint coatings and Trilla was refused a permit when it applied to the Agency. Trilla's operations were not found to violate Board emissions regulations for organic materials, and the record indicates Trilla was making efforts to reduce its objectionable emissions and was searching for compliant interior coatings. The Board made no finding of bad faith on the part of Trilla. Further, the record reveals that Trilla had attempted to obtain the required permit before the filing of the enforcement action, and in fact, on February 5, 1987, while this case was pending, the Board granted Trilla the variance it sought. By the terms of that variance Trilla was allowed until December 31, 1987, to emit VOM in excess of that allowed by the Board regulations. Had the Agency acknowledged the variance granted Trilla, and that Trilla was then in compliance with the Act, no further action would have been necessary for Trilla to take in order to comply with the permit requirements. Since the Board determined that "Trilla's efforts to achieve compliance with emissions standards [were] commendable," it is our opinion that the Board's determination that the maximum fine of $10,000 was warranted by Trilla's lack of diligence in pursuing a permit does not find support in the record. The Board should not attempt to make an example of Trilla since such a practice has been expressly disapproved of by this court and the penalty must bear some relationship to the seriousness of the infraction. (*Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406; *City of Chicago v. Pollution Control Board* (1978), 57 Ill. App. 3d 517, 373 N.E.2d 512.) Accordingly, we find the penalty imposed here is unsupported by the record and we remand this matter for reconsideration. See *Itasca Public School District, No. 10 v. Ward* (1989), 179 Ill. App. 3d 920.

For the reasons stated, the portion of the order of the Pollution Control Board which imposed the $10,000 fine is reversed and the cause is remanded to the Board for consideration of an appropriate penalty as warranted by the circumstances of this case.

Reversed and remanded.

MANNING, P.J., and QUINLAN, J., concur.