# Illinois Official Reports

## Appellate Court

---

*Greenside Properties, LLC v. Peoples Gas Light & Coke Co.*,
2017 IL App (1st) 162821

---

| | |
|---|---|
| Appellate Court Caption | GREENSIDE PROPERTIES, LLC, on Behalf of Itself and All Others Similarly Situated, Plaintiff-Appellant, v. PEOPLES GAS LIGHT AND COKE COMPANY, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-16-2821 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | October 10, 2017<br><br>November 16, 2017<br>November 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-439; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Calvo Law Offices, P.C., of Naperville (John W. Calvo, of counsel), for appellant.<br><br>Taft Stettinius & Hollister LLP, of Chicago (J. Timothy Eaton, John F. Kennedy, and Jonathan B. Amarilio, of counsel), for appellee.<br><br>Rooney Rippie & Ratnaswamy LLP, of Chicago (John E. Rooney, Anne W. Mitchell, and Hanna M. Conger, of counsel), for *amicus curiae* Northern Illinois Gas Company, d/b/a Nicor Gas. |

Jenner & Block LLP, of Chicago (Clifford W. Berlow, of counsel), and Jenner & Block LLP, of Washington, D.C. (Matthew E. Price (*pro hac vice*), of counsel), for *amicus curiae* Commonwealth Edison Company.

Panel                    PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.


**OPINION**

¶ 1       Greenside Properties, LLC (Greenside), filed a complaint charging Peoples Gas Light and Coke Company (Peoples Gas) with billing Greenside for services provided long after Greenside asked Peoples Gas to terminate services. The Cook County circuit court dismissed the complaint, finding that the claim fell under the jurisdiction of the Illinois Commerce Commission (Commission). We affirm the circuit court's judgment.

¶ 2                                    BACKGROUND
¶ 3       In 2016, Greenside filed a complaint against Peoples Gas, basing its claims on theories of fraud and deceptive trade practices. Greenside alleged that it managed a property on 102nd Street in Chicago and it arranged for Peoples Gas to provide natural gas service for the property. Greenside leased the property to a tenant.

¶ 4       In the complaint, Greenside explained that when Greenside leases a property it manages, it cancels the request for service from Peoples Gas and informs the tenant that the tenant must arrange to have Peoples Gas continue supplying gas to the property for the tenant. Greenside followed its usual procedure with the property on 102nd Street. In November 2013, Greenside requested a termination of services from Peoples Gas for the 102nd Street property. Peoples Gas sent a bill to Greenside for the 102nd Street property at the end of October 2013.

¶ 5       Greenside alleged that it heard nothing further from Peoples Gas about the property until June 2014, when Peoples Gas sent Greenside a bill for $1809.69 for gas used at the 102nd Street property. Greenside alleged that Peoples Gas generated bills for the 102nd Street property every month from October 2013 through June 2014 but it did not send the bills to Greenside. Peoples Gas never informed Greenside that Peoples Gas failed to terminate Greenside's services at the 102nd Street property, despite Greenside's request.

¶ 6       Greenside alleged that it experienced similar problems with several other properties it managed, including a property on Woodlawn Avenue. The Woodlawn property housed three separately metered units. In November 2013, Greenside asked Peoples Gas to terminate its request for service to the basement unit. Peoples Gas sent Greenside a bill in October 2013 for the basement unit, and Greenside heard nothing further from Peoples Gas about service to the basement unit until June 2014. In June 2014, Peoples Gas sent Greenside a bill in the

amount of $1151.37 for service to the basement unit for the period from October 2013 through June 2014. Greenside alleged that Peoples Gas had generated bills for the unit but it did not send the bills to Greenside and it never informed Greenside that it refused to honor Greenside's request for termination of service to the basement unit.

¶ 7 Greenside alleged that "[i]f Greenside does not pay a bill for these impermissible charges, Peoples Gas refuses to subsequently connect services at any other Greenside property and continues to send bills to Greenside indicating that it owes a past due balance." Because the problem occurred at several properties Greenside managed or owned, Greenside concluded that the improper posttermination billings occurred "[d]ue to a systematic error in Peoples Gas's billing," which caused Peoples Gas to generate bills for properties but not to send the bills to the property managers who had requested termination of services to those properties. Greenside sought to have the court certify a class of property managers and owners who requested termination of services from Peoples Gas and to whom Peoples Gas sent a bill for services provided after the requested termination date. Greenside sought reimbursement of all amounts improperly billed following the termination requests, together with "consequential damages such as needing to pay security deposits, not being able to initiate service on properties, and expending additional time, energy, and resources addressing Peoples Gas's unlawful billing."

¶ 8 Peoples Gas moved to dismiss the complaint under section 2-619(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a) (West 2016)), arguing that the Illinois Commerce Commission had jurisdiction over the claim. The circuit court dismissed the complaint. Greenside now appeals.

¶ 9                                                   ANALYSIS

¶ 10 We review *de novo* the dismissal of a complaint under section 2-619(a) of the Code. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2012)) establishes that the Commission "shall have general supervision of all public utilities *** and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine those public utilities *** with respect to the adequacy, security and accommodation afforded by their service [and] also with respect to their compliance with this Act and any other law, with the orders of the Commission and with the charter and franchise requirements." 220 ILCS 5/4-101 (West 2012). "[T]he Commission has the exclusive responsibility to 'see that the provisions of the Constitution and statutes of this State affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted.' " *Commonwealth Edison Co. v. City of Warrenville*, 288 Ill. App. 3d 373, 377-78 (1997) (quoting 220 ILCS 5/4-201 (West 1994)). "Thus, the legislature has given the Commission broad powers, so that the Commission on its own initiative can promulgate orders, rules or regulations fixing adequate service standards and requiring adequate facilities." *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 40.

¶ 11 The Act accords jurisdiction to the circuit court for some claims against utilities. The Act provides:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do

any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2012).

¶ 12　　Our supreme court summarized the distinction between claims that the Commission must decide and claims that litigants may bring to the circuit court: "[I]f a claim is for reparations, jurisdiction is in the Commission, while jurisdiction of an action for civil damages lies in the circuit court." *Sheffler*, 2011 IL 110166, ¶ 42. The *Sheffler* court added, "courts focus on the nature of the relief sought rather than the basis for seeking relief in determining whether an action falls within the jurisdiction of the Commission." *Sheffler*, 2011 IL 110166, ¶ 50.

¶ 13　　In *Sheffler*, the plaintiffs alleged that after a storm in 2007, Commonwealth Edison failed to restore power to the plaintiffs within 24 hours and some of the plaintiffs had no power for several days. The plaintiffs alleged that two plaintiffs in particular "suffered damage to their basement and personal property, house, appliances, and food, had to seek alternative living arrangements, and had to hire someone to repair the damage." *Sheffler*, 2011 IL 110166, ¶ 44. The plaintiffs sought compensation for "personal injury, property damage and financial damages, including the loss of use of property, and costs of repair and replacement of property." *Sheffler*, 2011 IL 110166, ¶ 44.

¶ 14　　The *Sheffler* court held that "the nature of the relief sought by plaintiffs is compensation for ComEd's allegedly inadequate service, which directly relates to the Commission's rate-setting functions for electrical power services. *** [I]t is essential that the Commission consider matters relating to services and rates of utilities, given the complex data underlying those matters." *Sheffler*, 2011 IL 110166, ¶ 53. The *Sheffler* court affirmed dismissal of the complaint with prejudice.

¶ 15　　Greenside points out that the *Sheffler* court affirmed the dismissal of the complaint on a separate basis before discussing the Commission's jurisdiction. See *Sheffler*, 2011 IL 110166, ¶¶ 33-38; but see *Sheffler*, 2011 IL 110166, ¶¶ 69-78 (affirming trial court's denial of leave to file fourth amended complaint solely on basis of *Sheffler*'s jurisdictional analysis). Assuming, *arguendo*, the discussion in *Sheffler* of the Commission's jurisdiction qualifies as *dicta* because the discussion was "unnecessary to the disposition of the case" (*People v. Williams*, 204 Ill. 2d 191, 206 (2003)), we note that the parties in *Sheffler* briefed and argued the issue of the Commission's jurisdiction. Thus, the discussion of jurisdiction in *Sheffler* is authoritative judicial *dicta,* which has "the force of a determination by a reviewing court and should receive dispositive weight in an inferior court." *Williams*, 204 Ill. 2d at 206; see also *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). Moreover, our supreme court reasserted *Sheffler*'s analysis of jurisdiction in *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 12. Accordingly, we apply here the authoritative reasoning of *Sheffler*.

¶ 16　　Greenside asks us to distinguish *Sheffler* on the basis of the kinds of problems described in the complaint. Greenside argues that its complaint alleges nothing as complex as the service disruption at issue in *Sheffler*. Instead, the complaint here involves "a mere transfer of service from Greenside's name onto the tenants" and the failure to notify Greenside of the

bills accruing on its account after it had requested a service termination. Greenside emphasizes that it "takes no issue with the particular rate charged over the relevant seven-month period." Greenside has presented "a claim of billing the wrong person—Greenside versus the respective tenants—then forcing Greenside to pay those erroneous bills."

¶ 17    The Illinois Administrative Code shows that the Commission treats these issues as matters falling under its authority. As currently amended, one section of the Administrative Code provides: "The utility shall not hold the landlord/property manager responsible for an amount owing to the utility by any tenant." 83 Adm. Code 280.35(d) (2014). Another section says, "The utility shall bill the customer monthly unless both the customer and the utility have agreed to bi-monthly or quarterly billing." 83 Adm. Code 280.50(b)(2) (2014).

¶ 18    We find that the amendments to the Administrative Code do not alter any substantive rights. See *Itasca Public School District No. 10 v. Ward*, 179 Ill. App. 3d 920, 926 (1989). Instead, the amendments clarify the Commission's jurisdiction and the procedures for obtaining remedies for utilities' mistakes and misconduct. See *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 888-90 (1st Cir. 1992). Greenside's prayer for consequential damages does not take the case outside the Commission's jurisdiction. *Sheffler*, 2011 IL 110166, ¶¶ 44, 53.

¶ 19    Greenside has alleged two specific billing errors, and it alleged that the errors form part of a systematic practice affecting other property managers. Under the broad explanation of "reparations" applied in *Sheffler*, the compensation for billing errors sought here qualifies as reparations. The circuit court correctly held that the Commission has jurisdiction over the claims presented here. Accordingly, we affirm the circuit court's judgment dismissing the complaint.

¶ 20    Affirmed.