COMMONWEALTH EDISON COMPANY, Plaintiff-Appellee, v. THE CITY OF WARRENVILLE, Defendant-Appellant.

Second District    No. 2—96—1060

Opinion filed May 22, 1997.

Barry L. Moss, George A. Marchetti, and Norma J. Guess, all of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Paul F. Hanzlik, E. Glenn Rippie, and Christopher W. Zibart, all of Hopkins & Sutter, and Pamela B. Strobel, of Commonwealth Edison Company, both of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Commonwealth Edison Company (ComEd), brought this action seeking to enjoin the defendant, the City of Warrenville (Warrenville), from using its zoning power to halt a project involving the construction of a new transmission line. The circuit court of Du Page County held that Warrenville's authority to halt or regulate the project through its zoning ordinance was preempted. The court therefore permanently enjoined Warrenville from interfering with the project. Warrenville appeals.

The record reveals that ComEd is a public utility regulated by the Illinois Commerce Commission (Commission) under the Public Utilities Act (220 ILCS 5/1—101 et seq. (West 1994)). ComEd provides electric service to customers throughout northern Illinois through the use of an integrated network of several thousand miles of high-capacity transmission lines operating at voltages of 138 kilovolts (kV) and above. These lines move "bulk power" from the various sources of supply to the portions of ComEd's service territory where customer demand exists. The power is eventually distributed to customers through a distribution system.

On October 18, 1995, pursuant to the Public Utilities Act, the Commission granted ComEd a certificate of public convenience authorizing ComEd to construct a new 138-kV transmission line and substation to meet the growing electric-service needs of the Wheaton-Warrenville area. The Commission entered its order granting the

certificate after extensive hearings in which Warrenville participated and opposed the project. The Commission found that the project was the only means of continuing to provide reliable electric service to central Du Page County (County) and that alternatives proposed by Warrenville were not feasible or reasonable. In part, the plan called for the installation of a 138-kV line to be installed along four miles of the Prairie Path replacing the existing 34-kV line. The Prairie Path is a hiking and nature trail used by pedestrians, cyclists, and equestrians. The County owns the path, but ComEd has a perpetual easement along it to construct, repair, and operate its towers, poles, lines, wires, and cables.

In its order, the Commission rejected arguments raised by Warrenville relating to local land use and specifically stated that its order was not conditioned on local zoning or permit approval. Warrenville appealed the Commission's order to this court. Warrenville also sought to stay the Commission's order pending appeal. Both the Commission and this court refused to stay the Commission's order.

After this court denied the request for a stay, ComEd notified Warrenville on January 18, 1996, that it would begin construction of the project. Warrenville then informed ComEd that it would not permit the project to be constructed unless ComEd obtained a special use permit from Warrenville before beginning construction. When ComEd began preliminary work on the project on January 25, 1996, Warrenville police arrived on the scene and halted all work. ComEd subsequently filed this action seeking to enjoin Warrenville from interfering with the project.

After hearing testimony and the parties' legal arguments, the trial court found that the legislature had vested the Commission with the authority to regulate utilities and that Warrenville's exercise of its zoning authority to regulate or require permits for the type of construction approved and authorized by the Commission was preempted. Accordingly, the trial court issued a permanent injunction prohibiting Warrenville from interfering with the project. Thereafter, Warrenville appealed the trial court's order. This court granted Warrenville's motion to stay the trial court's order pending the outcome of this appeal.

On September 27, 1996, this court decided the first appeal in this case and in a Rule 23 order affirmed the Commission's order granting ComEd a certificate to construct the project. *County of Du Page v. Illinois Commerce Comm'n*, No. 2—96—0027 (1996) (unpublished order under Supreme Court Rule 23). In reaching our decision in the first appeal, we held, among other things, that the Commission properly determined that it would not condition granting the certificate to

ComEd on its ability to obtain any unspecified local permits. In so holding, we found that "any ordinance enacted by a home-rule unit which effectively regulates a construction project approved by the Commission after a section 8—406(b) proceeding is preempted." *County of Du Page*, slip op. at 45. We further found that a non-home-rule unit of local government would be without the power to enact such an ordinance. This court also noted that it would leave to be addressed in another case the question of how its analysis would affect the application of Warrenville's particular zoning ordinance.

In this appeal, Warrenville raises that issue, contending that its zoning powers were not preempted by the Public Utilities Act.

■ The intent of the General Assembly in enacting the Public Utilities Act is located in section 1—102 (220 ILCS 5/1—102 (West 1994)), which provides in pertinent part:

> "The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services at prices which accurately reflect the long-term cost of such services and which are equitable to all citizens. It is therefore declared to be the policy of the State that public utilities shall continue to be regulated effectively and comprehensively." 220 ILCS 5/1—102 (West 1994).

To supervise public utilities, the General Assembly created the Commission. 220 ILCS 5/2—101 (West 1994). The General Assembly also explained the Commission's duties:

> "The Commission shall have general supervision of all public utilities, except as otherwise provided in this Act, shall inquire into the management of the business thereof and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine those public utilities and keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property owned, leased, controlled or operated are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with this Act and any other law, with the orders of the Commission and with the charter and franchise requirements." 220 ILCS 5/4—101 (West 1994).

Moreover, the Commission has the exclusive responsibility to

> "see that the provisions of the Constitution and statutes of this State affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted

and penalties due the State therefor recovered and collected." 220 ILCS 5/4—201 (West 1994).

Among the provisions of the Public Utilities Act that the Commission is obligated to enforce is section 8—406(b) (220 ILCS 5/8—406(b) (West 1994)). Section 8—406(b) provides that no public utility shall begin the construction of any new plant, equipment, property, or facility unless it obtains from the Commission a certificate of public convenience and necessity. 220 ILCS 5/8—406(b) (West 1994). For its part, the Commission cannot issue a certificate unless it will promote the public convenience and necessity. 220 ILCS 5/8—406(b) (West 1994).

It becomes clear, therefore, that the State has "created a comprehensive scheme for the regulation of public utilities generally." *Kirwin v. Peoples Gas Light & Coke Co.*, 173 Ill. App. 3d 699, 705 (1988). Since the enactment of the Utilities Act in 1913, the regulation of public utilities generally has been an area of statewide and not local concern. See *City of Geneseo v. Illinois Northern Utilities Co.*, 363 Ill. 89, 94-95 (1936); *Peoples Gas Light & Coke Co. v. City of Chicago*, 125 Ill. App. 3d 95, 100-01 (1984). More specifically, the Public Utilities Act vests the Commission with the responsibility for determining when a construction project will promote the Act's goal of ensuring adequate, reliable, efficient, and least-cost electrical service to the state's citizens.

■ With this background information in mind, we turn to the issue at hand: whether Warrenville's zoning ordinance is preempted to the extent that it interferes with ComEd's project as approved by the Commission. In Illinois, local governmental bodies (counties and municipalities) fall into one of two categories: home rule units and non-home-rule units. The powers accorded to each are different. Thus, we will examine separately the power of these two units to enact ordinances that regulate Commission-approved construction projects.

■ We first address the power of home rule units to enact ordinances that regulate public utilities. The terms for the grant of home-rule power are contained in article VII, section 6(a), of the Illinois Constitution of 1970, which provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Section 6(m) provides that "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

The terms of the grant of home rule power are broad and

imprecise, leaving to the courts the duty to determine whether a power exercised by a home rule unit is within the grant of section 6(a). *Ampersand, Inc. v. Finley*, 61 Ill. 2d 537, 539-40 (1975); *Kirwin*, 173 Ill. App. 3d at 703. Whether the disputed exercise of local governmental powers falls within the scope of home rule powers contemplated by section 6(a) generally depends on whether the home rule unit was acting in an area pertaining to its government and affairs. *Peoples Gas Light & Coke Co.*, 125 Ill. App. 3d at 98.

■ An ordinance pertains to the government and affairs of a home rule unit where it relates to problems that are local in nature rather than state or national. *Village of Bolingbrook v. Citizens Utilities Co.*, 158 Ill. 2d 133, 138 (1994). In more difficult cases where a problem has both local and statewide impact, courts are to consider the nature and extent of the problem, the units of government that have the most vital interest in a solution, and the role traditionally played by local and statewide authorities in dealing with the problem. *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501 (1984).

■ If an ordinance enacted by a home rule unit does not pertain to that unit's government and affairs, a state statute regarding that matter will preempt the ordinance. See *Village of Dolton ex rel. Winter v. CSX Transportation, Inc.*, 196 Ill. App. 3d 564, 570 (1990); *Kirwin*, 173 Ill. App. 3d at 703-04; *McLorn v. City of East St. Louis*, 105 Ill. App. 3d 148, 153-54 (1982). In the context of state action versus local action, preemption means the end of local legislative control over a given subject where the legislature has adopted a scheme of regulation over the same subject. *Kirwin*, 173 Ill. App. 3d at 703.

■ In the case at bar, we believe that utility regulation is not a matter pertaining to local government and affairs. Rather, the regulation of public utilities is purely a problem of statewide concern. See *Geneseo*, 363 Ill. at 95; *Peoples Gas Light & Coke Co.*, 125 Ill. App. 3d at 100-01. We believe this is even more true where, as here, the matter concerns the regulation of Commission-approved activities that affect the transmission of electric power. As one of our sister states has recognized, "[i]t is rather difficult to conceive of a subject which more requires uniform regulation at a high and broad level of authority than the method of transmission of electric power." *In re Public Service Electric & Gas Co.*, 35 N.J. 358, 373, 173 A.2d 233, 240 (1961).

Thus, any ordinance that effectively regulates a construction project approved by the Commission after a section 8—406(b) proceeding is preempted because it does not pertain to the unit's government and affairs. To hold otherwise would permit any number of home rule units to regulate construction projects that the Commission has

already deemed to be necessary to promote the public convenience and necessity. The effect would be to eviscerate the Commission's role as the body responsible for regulating public utilities and defeat the Public Utilities Act's goal of providing adequate, reliable, efficient, and least-cost electrical service to the state's citizens.

■ We now consider the power of a non-home-rule unit to enact an ordinance that regulates public utilities. In contrast to the constitutional provisions applicable to home rule units, non-home-rule units are governed by "Dillon's Rule." *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1086 (1994). Dillon's Rule provides that non-home-rule units possess only those powers expressly granted to them by the Illinois Constitution or by statute, powers incident to those expressly granted, and powers indispensable to the accomplishment of the declared objectives of the non-home-rule unit. *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 112 (1987). Non-home-rule units cannot adopt ordinances under a general grant of power that infringe upon the spirit of the state law or are repugnant to the general policy of this state. *Village of Mundelein v. Hartnett*, 117 Ill. App. 3d 1011, 1015 (1983). The state statute is the strongest indicator of public policy, and where the legislature speaks on a subject upon which it has constitutional power to legislate, the public policy is what the statute passed indicates. *Hartnett*, 117 Ill. App. 3d at 1015.

Generally, non-home-rule units possess zoning powers under section 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 1994)). However, ordinances passed under these powers that conflict with the spirit and purpose of a state statute are preempted by the statute. See *Hartnett*, 117 Ill. App. 3d at 1015. Here, the Public Utilities Act sets forth a comprehensive scheme whereby the Commission is responsible for regulating public utilities. Ordinances adopted by non-home-rule units that regulate public utilities, at least regarding a utility's activities which have been approved in a section 8—406(b) proceeding, conflict with this scheme. Thus, non-home-rule units do not possess the power to adopt or enforce such ordinances.

■ In summary, the Public Utilities Act preempts enforcement of ordinances adopted by home rule units and non-home-rule units that regulate or effectively regulate public utilities, at least where, as here, the subject matter involves Commission-approved construction projects that are intended to facilitate the transmission of electric service.

The cases cited by Warrenville for the proposition that the Commission's orders do not preempt a municipality's zoning ordinance

are distinguishable. None of the cases cited by Warrenville concern the preemptive scope of an order by the Commission that grants a certificate of public convenience and necessity pursuant to section 8—406(b) of the Public Utilities Act. See, *e.g., In re Wolf,* 314 Ill. App. 23 (1942); *Village of Bensenville v. Illinois Commerce Comm'n,* 29 Ill. 2d 601 (1963); *Commonwealth Edison Co. v. County of Lake,* 183 Ill. App. 3d 1060 (1989). *Village of Carpentersville v. Pollution Control Board,* 135 Ill. 2d 463 (1990), and *Lily Lake Road Defenders v. County of McHenry,* 156 Ill. 2d 1 (1993), are additionally distinguishable in that in those cases the legislature had specifically provided by the particular statute involved that the municipalities were not preempted, whereas the Public Utilities Act does not contain a similar provision. Compare 415 ILCS 5/1 *et seq.* (West 1994) with 220 ILCS 5/1—101 *et seq.* (West 1994).

Lastly, we note that Warrenville erroneously argues that our decision would render meaningless section 5—12001 of the Counties Code (55 ILCS 5/5—12001 (West 1994)) and section 110—15(c) of the Township Code (60 ILCS 1/110—15(c) (West 1994)). Those statutory provisions simply place additional restrictions on counties and townships beyond the scope of projects authorized by the Commission pursuant to a certificate of public convenience and necessity.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.