Nos. 2--99--1222 & 2--99--1110 cons. 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

                                

THE VILLAGE OF MUNDELEIN, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

) Nos. 99--DT--1369

                                )       99--TR--39900

                                )       99--TR--39902

v. )

)

FRANCISCO FRANCO, ) Honorable

) Patrick N. Lawler,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

THE VILLAGE OF LINCOLNSHIRE, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

) Nos. 99--TR--22008

                                )       99--TR--22011

                                )       99--TR--22012

v. )

)

EUGENIO GOMEZ, ) Honorable

) Patrick N. Lawler,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

These consolidated cases present the issue of whether home rule local governmental units exceed their home rule powers if they enact and enforce an ordinance that allows a law enforcement officer to stop a motor vehicle solely because an occupant of the motor vehicle was perceived to be not wearing a seat belt even though a statute prohibits law enforcement officers from making such a stop.  We conclude that home rule units do not exceed their home rule powers if they enact and enforce such an ordinance.

On April 13, 1998, the Village of Lincolnshire (Lincolnshire), a home rule unit, adopted ordinance No. 98--1548--10 (Lincolnshire ordinance) (Lincolnshire Village Code No. 98--1548--10 (eff. April 13, 1998)) pursuant to its home rule powers.  The Lincolnshire ordinance requires all noninfant occupants of a motor vehicle that is being operated on a roadway in Lincolnshire to wear a properly adjusted and fastened seat belt.

On February 8, 1999, a Lincolnshire police officer stopped a motor vehicle that was being driven by defendant Eugenio Gomez.  The sole reason for the stop was that the police officer perceived Gomez to be in violation of the Lincolnshire ordinance by not wearing a seat belt.  Following the stop, Gomez was arrested and charged with driving while his driving privileges were suspended (see 625 ILCS 5/6--303 (West 1998)).

Gomez filed a motion to quash his arrest and suppress evidence.  Following a hearing, the trial court issued a written order granting the motion.  The order found that the stop was improper because the Lincolnshire ordinance was contrary to section 12--603.1(e) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/12--603.1(e) (West 1998)).  Section 12--603.1(e) prohibits any law enforcement officer from stopping a motor vehicle solely for not wearing a seat belt.  Lincolnshire filed a timely notice of appeal and a certificate of impairment.

On October 5, 1998, the Village of Mundelein (Mundelein), a home rule unit, adopted ordinance No. 98--10--40 (Mundelein ordinance) (Mundelein, Ill., Ordinance No. 98--10--40  (eff. October 5, 1998)) pursuant to its home rule powers.  The Mundelein ordinance requires all noninfant occupants of a motor vehicle that is being operated on a roadway in Mundelein to wear a properly adjusted and fastened seat belt.  The Mundelein ordinance also provides:

"Any Village police officer may stop any motor vehicle, or driver or passenger of such vehicle solely on the basis of a violation or suspected violation by either the driver or passenger failing to have a fastened seat safety belt, in violation of this section while such motor vehicle is being operated on any roadway within the corporate limits of Village of Mundelein."  Mundelein, Ill., Ordinance No. 98--10--40 §(I)(B)(4) (eff. October 5, 1998).

On April 3, 1999, a Mundelein police officer stopped a motor vehicle that was being driven by defendant Francisco Franco.  The sole reason for the stop was that Franco was perceived to be violating the Mundelein ordinance by not wearing a seat belt.  The police then arrested Franco for driving under the influence of alcohol (see 625 ILCS 5/11--501(a) (West 1998)).  Franco's driver's license was subsequently summarily suspended (see 625 ILCS 5/11--501.1 (West 1998)).

Franco filed a motion to suppress evidence and a petition to rescind the summary suspension.  Following hearings, the trial court issued orders granting the motion and the petition.  In the order granting the motion, the trial court found that the stop was improper because the Mundelein ordinance was contrary to section 12--603.1(e) of the Vehicle Code (625 ILCS 5/12--603.1(e) (West 1998)).  Mundelein then filed a timely notice of appeal and a certificate of impairment.  The notice of appeal indicated that Mundelein was appealing from both the order granting Franco's motion to suppress and the order granting Franco's petition to rescind the summary suspension of his driver's license.

We consolidated the appeals of Lincolnshire and Mundelein (plaintiffs).  Plaintiffs filed joint appellate briefs.  We note that Gomez has not filed an appellee's brief.  We will therefore review Lincolnshire's appeal under the principles enunciated in 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128 (1976).

On appeal, plaintiffs contend that the trial court orders that granted Gomez's motion to suppress and Franco's motion to suppress and petition to rescind the summary suspension of his driver's license should be reversed.  Plaintiffs assert that the trial court erred when it found that the stops of defendants for violating plaintiffs' "primary stop" seat belt ordinances were improper.   By "primary stop" plaintiffs mean a stop based solely on a violation or suspected violation of the ordinance.   Plaintiffs argue that the stops were proper because enacting their primary stop ordinances was within their home rule powers.  The parties do not dispute that the Lincolnshire ordinance and the Mundelein ordinance are primary stop ordinances.

Franco responds that the trial court did not err because a primary stop seat belt ordinance is invalid.  In Franco's view a local authority that enacts such an ordinance exceeds its home rule powers.  Franco asserts that in the Vehicle Code the legislature expressed an intent that section 12--603.1(e), the statute prohibiting a stop solely on the basis of a failure to wear a seat belt, should be uniformly applied throughout the state.  Franco argues that a primary stop seat belt ordinance is invalid because it directly conflicts with this legislative intent.

As home rule units, plaintiffs' exercise of their home rule powers derives from the Illinois Constitution of 1970.  Section 6(a) of article VII of the constitution defines home rule units and provides:

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."  Ill. Const. 1970, art. VII, §6(a).

The constitution further provides that the "[p]owers and functions of home rule units shall be construed liberally."  Ill. Const. 1970, art. VII, §6(m).  Our supreme court has stated that the constitution gives home rule units "the broadest powers possible."  
Scadron v. City of Des Plaines
, 153 Ill. 2d 164, 174 (1992).

On the other hand, home rule powers are not unlimited and the legislature "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power."  Ill. Const. 1970, art. VII, §6(h).  A home rule unit may exercise its home rule powers concurrently with the state unless the legislature specifically limits the concurrent exercise of home rule powers or specifically declares the state’s exercise of power to be exclusive.  Ill. Const. 1970, art. VII, §6(i); 
Village of Bolingbrook v. Citizens Utility Co.
 158 Ill. 2d 133, 138 (1994).  In order to limit home rule power, a statute must contain express language as to the state’s exclusive control; "[i]t is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power."  
Bolingbrook
, 158 Ill. 2d at 138.

In this case, plaintiffs contend that they properly exercised their home rule power in enacting their primary stop seat belt ordinances.  Plaintiffs argue that nothing in the Vehicle Code specifically limits their concurrent power to regulate seat belt use or expressly declares that the state's exercise of power regarding seat belt use, particularly as expressed in section 12--603.1(e) of the Vehicle Code (625 ILCS 5/12--603.1 (West 1998)), was intended to be exclusive.

Franco counters that sections 11--207, 11--208, 11--208.1, and 11--208.2 of the Vehicle Code (625 ILCS 5/11--207, 11--208, 11--208.1, 11--208.2 (West 1998)) show that the legislature intended to limit local authorities from enacting ordinances that conflict with section 12--603.1(e).  Franco argues that this is because a fair reading of sections 11--207, 11--208, 11--208.1, and 11--208.2 shows that the legislature intended these sections to apply to the entire Vehicle Code, including section 12--603.1(e).

These appeals obviously involve statutory construction.  Because the construction of a statute is a question of law, our standard of review is 
de
 
novo
.  
People v. Whitney
, 188 Ill. 2d 91, 98 (1999).  Our supreme court recently reiterated the familiar principles that guide us in construing a statue when it stated:

"In the exercise of statutory construction, our primary task is to ascertain and effectuate the intent of the legislature.  In interpreting a statute we may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims.  Also, we must assume that the legislature did not intend an absurd or unjust result.  However, our inquiry must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent.  The language of the statute must be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, we have no occasion to resort to aids of construction.  Nor, under the guise of statutory interpretation, can we 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language. [Citations.]"  
People v. Pullen
, 192 Ill. 2d 36, 42 (2000).

Pursuant to these principles, we first turn to the language of the statutes in question.  The first statute cited by Franco is section 11--207 of the Vehicle Code which, Franco notes, is captioned "Provisions of Act uniform throughout state" (625 ILCS 5/11--207 (West 1998)).   The text of section 11--207 provides, in relevant part:

"The provisions of this Chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein.  Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Chapter ***."  625 ILCS 5/11--207 (West 1998).

Plaintiffs take the position that the plain language of section 11--207 of the Vehicle Code shows that its uniformity provisions are limited to the provisions in chapter 11.  In support of this position, plaintiffs note that the text of section 11--207 plainly refers to "this Chapter" three times but does not refer to anything outside "this Chapter."  Franco responds by asserting that the use of the words "this Chapter" in section 11--207 does not necessarily restrict the scope of section 11--207 to chapter 11 of the Vehicle Code.  Franco points to the caption of section 11--207  and argues that the use of the word "Act" in the caption shows that the legislature intended the scope of section 11--207 to be the entire Vehicle Code and not just chapter 11 of the Vehicle Code.

The Vehicle Code defines the word "Act" to mean the Vehicle Code "unless the context otherwise clearly indicates."  625 ILCS 5/1--101.1 (West 1998).  The Vehicle Code defines the word "Chapter" to mean a chapter of the Vehicle Code "unless the context otherwise clearly indicates."  625 ILCS 5/1--111.1 (West 1998).  Thus, unless otherwise indicated by the context, the words "Act" and "Chapter" have different meanings within the Vehicle Code.  We find nothing in the context of section 11--207 that clearly indicates that the legislature intended that "Chapter" as used in section 11--207 should mean anything other than "Chapter" as defined by the Vehicle Code.

Moreover, the Vehicle Code provides that "Chapter, Article and Section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any Chapter, Article or Section hereof."  625 ILCS 5/20--201 (West 1998).  Franco's argument that the use of the word "Act" in the caption of section 11--207 means that the legislature meant "Act" rather than "Chapter" in the text of section 11--207 cannot stand in the face of the Vehicle Code’s  own clear provisions that headings do not affect the meaning or intent of the text below the heading or caption.

Furthermore, the language of sections 11--208.1 and 11--208.2 of the Vehicle Code (625 ILCS 5/11--208.1, 11--208.2 (West 1998)), two of the sections that Franco argues show that the legislature intended the chapter 11 sections to apply to the entire Vehicle Code, actually show by their plain language that the legislature could certainly distinguish between the words "Act" and "Chapter" within the Vehicle Code.  Both sections 11--208.1 and 11--208.2 begin with the phrase "The provisions of this Chapter of this Act."  To the extent that the legislature's use of this phrase in sections 11--208.1 and 11--208.2 shows that the legislature could distinguish between the word "Act" and the word "Chapter," these sections tend to further undermine Franco's argument that in  section 11--207 the legislature did not intend to distinguish between these words.

For all these reasons, we find that the language of section 11--207 is unambiguous and means just what it says, 
i.e.
, that "[t]he provisions of 
this
 
Chapter
 shall be applicable and uniform throughout this State *** and no local authority shall enact or enforce any ordinance *** in conflict with the provisions of 
this
 
Chapter
 *** " (emphasis added) (625 ILCS 5/11--207 (West 1998)).  We therefore agree with plaintiffs that the uniformity provisions of section 11--207 are limited to chapter 11 and do not apply to other chapters of the Vehicle Code.  Accordingly, we conclude that the uniformity provisions in section 11--207, by themselves, did not prohibit plaintiffs from enacting ordinances that were inconsistent with section 12--603.1(e) because section 12--603.1(e) is not in chapter 11.

We note that, although the parties do not refer to it, a statement in an opinion issued by this court appears to be contrary to our conclusion regarding section 11--207.  Citing section 11--207 of the Vehicle Code,
 
this court stated that "the Illinois Vehicle Code shall be applicable and uniform throughout the State, and no municipality may enact or enforce any ordinance in conflict with its provisions."  
City of De Kalb v. White
, 227 Ill. App. 3d 328, 330 (1992).  However, this statement is not supported by analysis based on the statutory construction of section 11--207.  Therefore, to the extent that the statement differs with our conclusion in this case, we decline to follow it.

We now turn to Franco's argument that reading section 11--207 in conjunction with sections 11--208, 11--208.1, and 11--208.2 of the Vehicle Code shows that the legislature intended to prohibit home rule units from enacting ordinances in conflict with section 12--603.1(e). Section 11--208 of the Vehicle Code lists various specific powers that the provisions of the Vehicle Code permit local authorities to exercise "with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power."  625 ILCS 5/11--208(a) (West 1998).  Franco correctly notes that section 11--208 permits the local regulation of subjects that are governed by sections of the Vehicle Code in chapters other than chapter 11 of the Vehicle code.  For example, section 11--208 permits the local regulation of the use of high beam headlights, a subject generally governed by section 12--210 in chapter 12 of the Vehicle Code (625 ILCS 5/12--210 (West 1998)).  625 ILCS 5/11--208(c) (West 1998).

Franco asserts that if section 11--207 is construed to limit its uniformity provisions to chapter 11 (as we have construed it) then section 11--208 becomes an exercise in legislative absurdity.  Franco reasons that if the uniformity provisions in section 11--207 apply only to chapter 11 then it was unnecessary for the legislature to set out specific permitted activities governed by sections of the Vehicle Code outside chapter 11 as it has done in section 11--208, which, as Franco sees it, then becomes superfluous.  Franco argues that, because a statute should not be construed to render part of the statute superfluous, plaintiffs' construction of section 11--207 must be erroneous.

We agree that statutory construction should not render part of a statute superfluous.  However, we do not agree that construing section 11--207 of the Vehicle Code so that its uniformity provisions apply only to chapter 11 renders section 11--208 superfluous.  Franco's reasoning is premised on an assumption that the legislature enacted section 11--208 to be read only with reference to section 11--207.  This reasoning ignores the plain language of section 11--208, which refers to "[t]he provisions of this Code" when specifying the areas within which local authorities may exercise their power.  625 ILCS 5/11--208(a) (West 1998).  Thus, by its plain language, section 11--208 refers to the entire Vehicle Code while, as we have previously found, section 11--207 refers only to chapter 11 of the Vehicle Code.  Because sections 11--207 and 11--208, by their plain language, differ in scope, we cannot agree with Franco's argument that construing the uniformity provisions of section 11--207 to be limited to chapter 11 renders section 11--208 superfluous or an exercise in legislative absurdity.

We now turn to section 11--208.1, which provides:

"The provisions of this Chapter of this Act, as amended, and the rules and regulations promulgated thereunder by any State Officer, Office, Agency, Department or Commission, shall be applicable and uniformly applied and enforced throughout this State, in all other political subdivisions and in all units of local government."  625 ILCS 5/11-208.1 (West 1998).

The beginning phrase of section 11--208.1 unambiguously signifies an intent to focus on chapter 11 of the Vehicle Code.  Section 11--208.1 then refers to other rules and regulations promulgated outside the Vehicle Code and states that these should be uniformly applied throughout the state.  625 ILCS 5/11--208.1 (West 1998).  Franco does not explain how the provisions of section 11--208.1 could affect section 12--603.1(e) of the Vehicle Code, and we conclude that they do not affect that section.  Therefore, Franco's reliance on section 11--208.1 is misplaced.

We next turn to section 11--208.2, which provides:

"The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Section 11--208 and 11--209 of this Chapter of this Act."  625 ILCS 5/11--208.2 (West 1998).

Section 11--209, which is referred to in section 11--208.2, concerns the powers of municipalities and counties to contract with various entities regarding the regulation of traffic and therefore is not relevant here.  See 625 ILCS 5/11--209 (West 1998).

Section 11--208.2 is noteworthy because it expressly addresses the authority of home rule units with respect to their power to adopt regulations.  However, the section begins with the phrase "[t]he provisions of this Chapter of this Act" and goes on to refer to the power of home rule units with respect to adopting regulations inconsistent with the regulations "herewith," which we believe refers to "this Chapter of this Act," 
i.e.
, chapter 11.  625 ILCS 5/11--208.2 (West 1998).  If so, then section 11--208.2 would not limit the power of home rule units to enact regulations inconsistent with parts of the Vehicle Code outside chapter 11, such as section 12--603.1(e).

Support for this construction of section 11--208.2 is found in 
Town of Cicero v. LaFrancis
, 282 Ill. App. 3d 556 (1996).  In that case, the appellate court held that the legislature did not intend to limit home rule powers with respect to a statute in chapter 2 of the Vehicle Code.  In reaching its holding, the court stated that section 11--208.2 of the Vehicle Code limited the authority of home rule units to adopt regulations inconsistent with the provisions of chapter 11 of the Vehicle Code.  
Town of Cicero
, 282 Ill. App. 3d at 559.  This statement is clearly in agreement with our construction of section 11--208.2

Additional support for our construction of section 11--208.2 is found in a recent amendment to section 11--208 of the Vehicle Code.  The amendment, which became effective January 1, 2000, added subsection (e) to section 11--208 (625 ILCS 5/11--208(e) (West  Supp. 1999)).  Subsection (e) addresses the authority of local governments, including home rule units, to enact or enforce ordinances that affect motorcycles and motorcycle riders in various respects.  One of the areas addressed involves section 12--602 of the Vehicle Code, which requires mufflers on motor vehicles (625 ILCS 5/12--602 (West 1998)).  Subsection (e) ends by stating:

"No unit of local government, including a home rule unit, may regulate motorcycles in a manner inconsistent with this Code.  This subsection (e) is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State."  625 ILCS 5/11--208(e) (West Supp. 1999).

This language in subsection (e) is significant because it shows that the legislature certainly can be very specific when it wants to express its intention to limit the powers of home rule units.  The language is also significant because it is in section 11--208, which suggests that the legislature saw a need to include such language when it sought to limit the powers of home rule units with respect to parts of the Vehicle Code outside chapter 11.  If section 11--208.2 did that, as Franco argues, then this language would not have been necessary.

For these reasons we conclude that section 11--208.2 does not limit the powers of home rule units with respect to sections of the Vehicle Code outside chapter 11.  Consequently, Franco's reliance on section 11--208.2 to support his position that the legislature intended to limit the powers of home rule units with respect to section 12--603.1(e) is misplaced.

In sum, we conclude that sections 11--207, 11--208, 11--208.1, and 11--208.2 of the Vehicle Code, construed either individually or jointly, do not specifically limit the powers of home rule units to enact and enforce ordinances that are inconsistent with section 12--603.1(e) of the Vehicle Code.  Therefore, we cannot agree with Franco's argument that these sections of the Vehicle Code prohibited plaintiffs from enacting their primary seat belt ordinances.

Franco does not contend that there is anything in chapter 12 of the Vehicle Code that prohibits a home rule unit from enacting an ordinance that is inconsistent with section 12--603.1(e).  We are unaware of any such provision anywhere in the Vehicle Code.  We therefore conclude that the legislature has not expressed an intent that the state should have exclusive control of the regulation of seat belt use.  In the absence of such an express intent, we hold that home rule units have the power to enact and enforce primary stop seat belt ordinances.

The legislature’s use of language in the Code of Criminal Procedure of 1963 that is similar to the language in section 12--603.1(e) of the Vehicle Code does not change our conclusion.  The parties do not refer to section 108--1(2) of the Code of Criminal Procedure of 1963, which provides:

"No motor vehicle, or driver or passenger of such vehicle, shall be stopped or searched by any law enforcement officer solely on the basis of a violation or suspected violation of Section 12--603.1 of the Illinois Vehicle Code."  725 ILCS 5/108--1(2) (West 1998).

However, just as with section 12--603.1(e) of the Vehicle Code, we are unaware of any legislative intent to prohibit home rule units from enacting ordinances that are inconsistent with section 108--1(2) of the Code of Criminal Procedure of 1963.  In the absence of such express intent, home rule units may exercise their home rule powers concurrently with the state with respect to subjects governed by the Code of Criminal Procedure of 1963.  See 
People v. Jaudon
, 307 Ill. App. 3d 427, 444 (1999) (finding two sections of Code of Criminal Procedure of 1963 did not preempt ordinance).  Accordingly, because section 108--1(2) of the Code of Criminal Procedure of 1963 does not contain a specific and express statement declaring that the state has exclusive control of motor vehicle stops based solely on a perceived failure to wear a seat belt, we conclude that it does not prohibit home rule units from enacting and enforcing primary stop seat belt ordinances.

For all these reasons, we conclude that the trial court erred when it ruled that plaintiffs’ primary stop seat belt ordinances were invalid because they were contrary to section 12--603.1(e) of the Vehicle Code.  Therefore, the trial court orders granting Gomez’s motion to suppress and Franco’s motion to suppress and petition to rescind the statutory summary suspension of his driver’s license are reversed, and these causes are remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

INGLIS, J., concurs.

PRESIDING JUSTICE BOWMAN, specially concurring:

I specially concur.  While I agree with this opinion's analysis of the law, factual determinations, and result, I am concerned about those parts of the ordinances at issue that directly conflict with the provisions of the Illinois Vehicle Code and the Code of Criminal Procedure of 1963 prohibiting police from stopping a vehicle solely because of a perceived violation of the seat belt law.

In deciding whether the exercise of local governmental power falls within the scope of home rule powers contemplated by section 6(a) of article VII of the Illinois Constitution of 1970, courts should decide whether the home rule unit was acting in an area pertaining to its government and affairs.  
Commonwealth Edison Co. v. City of Warrenville
, 288 Ill. App. 3d 373, 379 (1997).  "An ordinance pertains to the government and affairs of a home rule unit where it relates to problems that are local in nature rather than state or national."  
Commonwealth Edison
, 288 Ill. App. 3d at 379.  In my view, the decision as to whether a home rule unit exceeded the scope of its powers in enacting a particular ordinance should include a determination of whether the ordinance pertained to the government and affairs of the home rule unit.  Further, I question whether the portions of the ordinances allowing police to stop a vehicle solely because of a perceived seat belt violation relate to problems that are local in nature.  However, 
the parties here have not raised the issue of whether the ordinances pertained to the villages' government and affairs.  Accordingly, I believe that issue should be left for a later case where it is raised and fully briefed.