SIXTH DIVISION

May 18, 2001

No. 1-00-2658

In re
 ESTATE of NAYMAT AHMED, a Disabled Person

(The Northern Trust Company, Petitioner-Appellant
).

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Miriam Ellen Harrison,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal involves the trial court's denial of the request of petitioner The Northern Trust Company (Northern Trust) to transfer the contents of the guardianship estate of Naymat Ahmed, a disabled person, to a trust.  On appeal, Northern Trust contends that the trial court erred in denying its petition, which was brought pursuant to section 11a-18(a-5) of the Probate Act of 1975 (the Act) (755 ILCS 5/11a-18(a-5) (West 1998)).  Because we find the language of the Act to be permissive and not mandatory, we affirm the judgment of the trial court.

The record on appeal establishes the following facts.  Ahmed has been severely retarded since his birth in 1976.  Following a 1984 jury trial, Ahmed received a medical malpractice judgment of $8,126,711.
(footnote: 1)  Those funds, which now total approximately $17 million, are in a guardianship estate supervised by Northern Trust in Chicago.  

Ahmed has lived in Texas with his parents and three sisters since 1982.
  Ahmed's estate includes cash, common stock, municipal bonds and real estate, namely, the family's Texas home.  The record indicates that prior to the present action, the trial court approved a budget of $11,000 per month for Ahmed's care, including $5,500 for nursing care and $1,200 for physical and speech therapy.  Family expenses, including automobile and homeowners insurance and real estate taxes, also have been paid from the estate.  In December 1998 and November 1999, the court approved Northern Trust's requests to transfer $10,000 from the guardianship estate to each of Ahmed's parents and sisters as gifts.     

In November 1999, Northern Trust filed a petition requesting that it be permitted under section 11a-18(a-5) to establish a grantor trust and transfer the entire balance of Ahmed's estate to that account to allow "more flexibility in the administration of [Ahmed's] assets."  Northern Trust stated that it is unlikely that Ahmed will use the entire sum of the guardianship estate during his lifetime and that proper estate planning would reduce the costs of administering the estate and would reduce federal estate taxes.  Northern Trust requested that, if such a trust was established, Northern Trust be allowed as trustee to make gifts of income and principal to Ahmed's family.  

At a hearing on Northern Trust's petition, the court heard testimony regarding Ahmed's daily living.
(footnote: 2)  Ahmed
 spends most of the day in a wheelchair but can walk with the help of arm braces.  He is unable to feed, bathe or dress himself.  On weekdays, an assistant stays with Ahmed for about four hours to allow Ahmed's mother to shop or run errands, and a male attendant helps Ahmed shower and dress.  Ahmed takes three medications to control seizures, which occur once or twice a month and include inappropriate screaming and laughing.  Although not violent toward others, Ahmed sometimes bites his hand or strikes himself in the head with his hand.  Ahmed seems happy most of the time but can display sudden mood swings.   

Steven Rothke, a licensed clinical psychologist
, testified that Ahmed's prior schooling aided in his development as much as it possibly could.  He stated that continued enrichment programs would benefit Ahmed in that he would enjoy them; however, he would not likely learn new skills.  Rothke said Ahmed would not benefit from being in a residential facility as opposed to living with his family.

A Northern Trust representative testified that Ahmed's estate would receive higher returns in a trust account than in a guardianship account and that Northern Trust could administer a revocable trust using part of the estate assets. 

The trial court denied Northern Trust's request to transfer all of Ahmed's funds from the guardianship estate to a trust, stating that would not be consistent with the legislature's intent in passing section 11a-18(a-5) of the Act.  Instead, the 
court authorized Northern Trust to establish a trust accessible to the family in an amount equal to the $675,000 federal estate tax exemption.  The court also indicated that the $10,000 annual gifts to Ahmed's parents and sisters could continue.  

The trial court made the following comments regarding Northern Trust's request to transfer the entire guardianship estate:

"But I cannot see that it's necessary or in Naymat Ahmed's best interest to take him outside the protection of a guardianship estate with the funds that are there and rewarded to him by a jury for his own future needs for his pain and suffering.  And that there is a reason why – at least as a generic proposition, a reason why an investment would return a higher rate than another investment.  And I think it has to do with risks, and I think that's why the legislature put out a discrete list of approved investments for disabled adults. ***

I think the reason [the] legislature
 did it was to protect the ward like in this guardianship statute that we have.  There has to be ongoing interaction between the Court and the guardian."

On appeal, Northern Trust contends that the trial court incorrectly interpreted section 11a-18(a-5) of the Act in concluding that the statute only allowed the creation of a trust using funds that are not needed for Ahmed's support.  Northern Trust argues that section 11a-18 was enacted to allow disabled individuals to enjoy the same estate planning options and advantages exercised by those who are not disabled
, and that the statute therefore allows the establishment of a trust that includes Ahmed's entire guardianship estate.  Northern Trust points out that Ahmed has been well cared for, his estate is large enough to provide for his current and future foreseeable needs, and 
Northern Trust has successfully managed Ahmed's guardianship estate. 

In response
,
(footnote: 3) the guardian
 ad litem
 in this case asserts that this court must review the trial court's action 
de novo
 because the case centers on statutory interpretation.  The guardian 
ad litem
 contends that under the plain meaning of section 11a-18(a-5), the establishment of a trust using the estate of a disabled person is a matter left to the court's discretion, as indicated by the section's use of the word "may," and that the court was not required to grant Northern Trust's petition and transfer the assets of Ahmed's estate into a non-guardianship trust.  The guardian 
ad litem
 argues that in passing section 11a-18(a-5), the Illinois legislature did not indicate an intent to eliminate court supervision of the estates of disabled people and that public policy favors continued oversight of such estates.  

Section 11a-18(a-5) of the Act provides:

"The probate court, upon petition of a guardian, other than the guardian of a minor, and after notice to all other persons interested as the court directs, may authorize the guardian to exercise any or all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability.  The court may authorize the taking of an action or the application of funds not required for the ward's current and future maintenance and support in any manner approved by the court as being in keeping with the ward's wishes so far as they can be ascertained.  The court must consider the permanence of the ward's disabling condition and the natural objects of the ward's bounty.  In ascertaining and carrying out the ward's wishes the court may consider, but shall not be limited to, minimization of State or federal income, estate, or inheritance taxes; and providing gifts to charities, relatives, and friends that would be likely recipients of donations from the ward."  755 ILCS 5/11a-18(a-5) (West 1998).
 

Section 11a-18(a-5)
 goes on to list 11 possible "actions or applications of funds" that may be exercised, including "making gifts of income or principal, or both, of the estate, either outright or in trust" (755 ILCS 5/11a-18(a-5)(1) (West 1998)) and "creating for the benefit of the ward or others, revocable or irrevocable trusts of his or her property that may extend beyond his or her disability or life" (755 ILCS 5/11a-18(a-5)(6) (West 1998)).

The construction of a statute is a question of law, which this court reviews 
de novo
.  
Village of Mundelein v. Franco
, 317 
Ill. App. 3d
 512, 517, 740 
N.E.2d 
801, 805 (2000)
.  It is axiomatic that in construing a statute, the first step is to determine and give effect to the intent of the legislature in passing the law by considering "'the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims.'"  
Village of Mundelein
, 317 
Ill. App. 3d
 at 517, 740 
N.E.2d 
at 805, quoting 
People v. Pullen
, 192 
Ill. 2d
 36, 42, 733 
N.E.2d 
1235, 1238 (2000).  An 
analysis of statutory construction starts with the language of the statute itself, which this court should examine for its plain and ordinary meaning before other interpretive aids are consulted.
  R.W. Dunteman Co. v. C/G Enterprises, Inc.
, 181 
Ill. 2d
 153, 164, 692 
N.E.2d 
306, 312 (1998).
  Where the language of a statute is ambiguous, a court may resort to other means of statutory interpretation, such as legislative history, in order to determine the legislature's intent.
  Armstrong v. Hedlund Corp.
, 
316 
Ill. App. 3d
 1097, 1106, 738 
N.E.2d 
163, 171 (2000).   

Quoted above in its entirety, section 11a-18(a-5) of the Act provides, 
inter alia
, that the trial court "
may authorize
 the guardian to exercise any or all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability" and "
may authorize
 the taking of an action or the application of funds not required for the ward's current and future maintenance and support
 in any manner approved by the court
 as being in keeping with the ward's wishes so far as they can be ascertained."  (Emphasis added.)  755 ILCS 5/11a-18(a-5) (West 1998).  The statute also states that the court "
may consider
, but shall not be limited to, minimization of State or federal income, estate, or inheritance taxes; and providing gifts to charities, relatives, and friends that would be likely recipients of donations from the ward." (Emphasis added.) 755 ILCS 5/11a-18(a-5) (West 1998).
  

As a rule of statutory construction, the word "may" is permissive, as opposed to mandatory.  
Anderson v. Financial Matters, Inc.
, 285 
Ill. App. 3d
 123, 135, 672 
N.E.2d
 1261, 1269 (1996); 
cf
. 
Armstrong
, 316 
Ill. App. 3d
 at 1106, 738 
N.E.2d 
at 171 (use of "shall" regarded as mandatory).  
The consistent and exclusive use of the term "may" throughout section 11a-18(a-5) contradicts Northern Trust's assertions that the court was required to move the contents of Ahmed's guardianship estate into a grantor trust.  The language of the statute indicates that the court is not required to grant such requests but may do so within its discretion.  Moreover, the statute provides the safeguard of specifically requiring the court to approve of the transfer of funds that are not required for the disabled ward's current or future needs.

Although our analysis could rest upon the plain language of the statute alone, it is also valuable to note that in enacting section 11a-18(a-5), the Illinois legislature clearly favored the continued close supervision of the estates of disabled individuals.  In discussing the legislation, lawmakers stated that the law was intended to allow the guardians of those estates to engage in tax planning; however, such action could only be taken "with the permission of the probate court." 89th Ill. Gen. Assem., Senate Proceedings, May 21, 1996, at 38 (statements of Senator Barkhausen); see also 89th Ill. Gen. Assem., House Proceedings, May 14, 1996, at 98 (statements of Representative Biggert) ("[t]his is only to be done with the authority of the probate court, in accord with the wishes of the ward").

 The safeguards discussed in the legislature reflect Illinois courts' recognition of the need to oversee the estates of disabled persons.
  In 
In re Estate of Wellman
, 174 
Ill. 2d
 335, 673 
N.E.2d 
272 (1996), the supreme court discussed the judiciary's duties in such situations:

"The appointment of a guardian creates the relation of trustee and beneficiary between the guardian and the ward.  The estate becomes a trust fund for the ward's support.  [Citation.]  The guardian only acts as the hand of the court and is at all times subject to the court's direction in the manner in which the guardian provides for the care and support of the disabled person. [Citation.]

*** The trial court protects the disabled person as its ward, vigilantly guarding the ward's property and viewing the ward as a favored person in the eyes of the law.  The court functions in a central role, which permits it to oversee and control all aspects of the management and protection of the disabled person's estate.  The court controls the ward's person and estate, and directs the guardian's care, management, and investment of the estate. [Citation.]" 
Estate of Wellman
, 174 
Ill. 2d
 at 347-48, 673 
N.E.2d 
at 278.

See also 
Bruso v. Alexian Brothers Hospital
, 178 
Ill. 2d
 445, 454, 687 
N.E.2d 
1014, 1017 (1997).
 

Here, the trial court conducted a hearing which allowed the parties to present evidence to show, under the terms of the statute, the features of such a trust.  This was appropriate and such a hearing is recommended under these circumstances.  The court then exercised its discretion under the permissive language of section 11a-18(a-5) to 
deny Northern Trust's request to transfer Ahmed's guardianship estate to an unsupervised trust.  The court had the discretion to allow or deny the request.  The action that the court took in this case was consistent with 
the statute's plain meaning, its legislative history and the public policy favoring the supervision of the estates of disabled persons.  We find no basis to disturb the trial court's decision.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur,

FOOTNOTES
1: 
Ahmed's condition and medical malpractice suit are detailed in 
Northern Trust Co. v. County of Cook
, 135 
Ill. App. 3d
 329, 481 
N.E.2d 
957 (1985).   

2: 
Beginning at the age of five, Ahmed received special education training at public schools near Houston.  That training included programs in physical, occupational, speech and music therapy, adaptive physical education and special transportation.  
Northern Trust Co.
, 135 
Ill. App. 3d
 at 331, 481 
N.E.2d 
at 959.     

3: As the guardian 
ad litem
 acknowledges in his brief, he recommended to the trial court that Northern Trust's petition be granted.  However, as he points out, this court may only gain jurisdiction over a case in the existence of a controversy.  See
 
In re Adoption of Walgreen
, 186 
Ill. 2d
 362, 365, 710 
N.E.2d 
1226, 1227 (1999).